UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00146-TBR

MARIO LUIS GONZALEZ PLIEGO,                                        PETITIONER

v.

AMANDA LEIGH HAYES,                                                RESPONDENT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Mario Luis Gonzalez Pliego's Motion for Fees, Costs, and Expenses, [DN 104.] Respondent Amanda Leigh Hayes responded, [DN 106], and Petitioner replied, [DN 107.] At the request of the Court, Hayes filed supporting affidavits, [DN 113; DN 114.] Thereafter, Pliego filed a motion for leave to file a rebuttal declaration to Hayes' affidavits, [DN 116.] Hayes responded in opposition, [DN 117.] Fully briefed, this matter is now ripe for adjudication. In the interests of fairness, Pliego's motion to file a rebuttal declaration, [DN 116], is **GRANTED**. For the following reasons, Petitioner's motion fees, costs, and expenses, [DN 104], is **GRANTED IN PART AND DENIED IN PART**.

BACKGROUND

This case has a long and complex procedural history, the subject of which is the minor child of Petitioner Mario Luis Gonzalez Pliego ("Pliego") and Respondent Amanda Leigh Hayes ("Hayes"). This Court twice granted Pliego's Petition for Return of Children pursuant to the Hague Convention on the Civil Aspect of International Child Abduction (the "Hague Convention"), and the implementing legislation in the United States, the International Child Abduction Remedies Act ("ICARA"), set forth in 22 U.S.C. § 9001 *et seq.*, (formerly 42 U.S.C. § 11601, *et seq.*). *See Pliego v. Hayes*, No. 5:14-CV-00169, 86 F. Supp. 3d 678 (W.D. Ky. 2015)

1

(hereinafter "*Pliego I*"); *Pliego v. Hayes*, No. 5:15-CV-00146, 2015 WL 4464173 (W.D. Ky. July 21, 2015), *aff'd*, 843 F.3d 226 (6th Cir. 2016) (hereinafter "*Pliego II*"). Following *Pliego I*, the Court awarded fees to Pliego in the amount of $ 75,091.425, which represented a 50% reduction in the award sought by Pliego. *Pliego*, 2015 WL 1893426, at *1–3 (W.D. Ky. Apr. 24, 2015). Following *Pliego II*, the Court awarded Pliego fees in the amount of $100,471.18. [DN 85 (September 22, 2015 Memorandum Opinion and Order).]

Following the Court's grant of Pliego's second Petition for Return of Child in *Pliego II*, Hayes appealed to the Sixth Circuit Court of Appeals, which affirmed the decision of this Court. *Pliego v. Hayes*, 843 F.3d 226 (6th Cir. 2016). In this instant motion, Pliego seeks another award of fees; specifically, he seeks the fees, costs, and expenses incurred during the appeal of *Pliego II* to the Sixth Circuit. [DN 104.] Though Pliego requested that the Sixth Circuit award him those fees on appeal, the Sixth Circuit found that this Court was the proper Court to determine any potential award of fees, and it therefore "d[id] not reach the issue of whether the district court that ordered the child's return in *Pliego II* may, upon separate motion, award fees incurred on th[e] appeal." *Pliego*, 843 F.3d at 238. Accordingly, this is the task now before the Court.

DISCUSSION

Pliego has requested total attorney and paralegal fees of $56,122.50. [DN 104 at 4.] This includes attorney Rebecca McKelvey Castañeda's 59.25 hours, billed at $295 ($17,478.75); litigation costs and expenses, ($2,477.94); attorney Brenton Lankford's 98 hours, billed at $260, ($25,438.75); attorney Ashley Goin's 75 hours, billed at $192 ($14,706.25); attorney Gregory Smith's 10 hours, billed at $435 ($4,350); and paralegal Kathy Hagerty's 18.25 hours, billed at $140.00 ($2,555). These amounts, less a "courtesy discount" of $8,406.25, total to $56,122.50. [DN 104 at 4.]

Additionally, Pliego requests costs and expenses incurred during the appeal in the amount of $2,477.94. [*Id.* at 4–5.] These include expenses for copies ($255.78); telephone usage ($8.20); a transcript of Hayes' Testimony at a July 10, 2015 hearing ($91.25); Pacer charges ($0.30); court reporter invoices for copies of transcripts ($288.35, $124.20, $1,354.15, $333.90); Lexis/Nexis usage ($13.06); and binding ($8.75). Adding together all attorney fees, paralegal fees, costs, and expenses, Pliego seeks a grand total of $58,600.44 in the instant motion. [DN 104 at 5.]

In response, Hayes argues that the Court should not give an award of fees for several reasons. Among these are the facts that, according to Hayes, she has since been awarded custody by Turkish courts, Pliego has refused to comply with Turkish custody orders, Pliego has continued to assert his immunity to avoid paying any child support or legal fees to Hayes, that Pliego is incurring about $750 a month for supervised visits with her son, and that an award of fees would render Hayes unable to care for her son. [*See* DN 106 (Hayes' Response).] Moreover, Hayes contends that, even if the Court were to find that *some* fees are appropriate in this matter, the $58,600.44 is excessive. [*Id.* at 7–8.] Specifically, Hayes contends that it was unnecessary for four attorneys to bill significant hours while representing Pliego on appeal, that Pliego's Sixth Circuit brief was, in large part, "a reiteration of major portions of earlier lower Court briefs," and thus did not require significant additional work. [*Id.* at 7.]

> Under ICARA, the federal implementing legislation of the Hague Convention,
>
> [a]ny court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs [and] legal fees . . . , unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3) (formerly 42 U.S.C. § 11607(b)(3)). The party seeking an award of attorney's fees must submit adequate evidence detailing the hours worked and the rates claimed. *Hensley v. Eckhart,* 461 U.S. 424, 433 (1983). Where the attorney's documentation is inadequate, or the claimed hours are duplicative or excessive, the court may reduce the award accordingly. *Wasniewski v. Grzelak–Johannsen,* 549 F.Supp.2d 965, 972 (N.D. Ohio 2008). "The goal is not to overcompensate counsel with a 'liberal' fee, but to award the 'reasonable' fee necessary to encourage competent lawyers to undertake the representation." *Id.* "A reasonable fee is one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Dowling v. Litton Loan Serv.,* LP, 320 F. App'x. 442, 446 (6th Cir. 2009) (quoting *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir. 2004)).

ICARA gives courts the discretion to reduce or even eliminate a respondent's obligation to pay a prevailing petitioner's attorney's fees, costs, and expenses where such an award "would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). Applying this standard, many courts have altered or refused to make awards of costs and fees in certain situations. First, "[a]t least two courts of appeals have recognized that a fee award in a case under the Convention might be excessive and an abuse of discretion if it prevents the respondent-parent from caring for the child." *Norinder v. Fuentes*, 657 F.3d 526, 536 (7th Cir. 2011) (citing *Whallon v. Lynn,* 356 F.3d 138, 139 (1st Cir.2004); *Rydder v. Rydder,* 49 F.3d 369, 373–74 (8th Cir.1995)).

Second, many courts

> have not simply reduced awards of costs in light of a respondent's inability to pay, but have declined to award costs at all, where the losing respondent would be unable to pay any amount of an award, on the ground that any award would be "clearly inappropriate" in such circumstances. *See, e.g., Montero–Garcia v. Montero,* No. 3:13–cv–00411–MOC, 2013 WL 6048992, *4–*6 (W.D.N.C. Nov. 14, 2013) (slip op.) (declining to award fees, costs, and expenses to the petitioner, because doing so "would simply serve to convert counsel's pro bono work into a marital debt"); *East Sussex Children Servs. v. Morris,* 919 F.Supp.2d 721, 734

(N.D.W.Va.2013) ("[I]t would be clearly inappropriate to grant an award of attorneys fees and costs as Petitioner has not presented adequate evidence to substantiate such a request and Respondents would be unable to pay any amount of an award."); *Lyon v. Moreland–Lyon,* No. 12–2176–JTM, 2012 WL 5384558, *3 (D.Kan. Nov. 1, 2012) ("Given the respondent's financial position, this court finds that awarding any of petitioner's attorneys' fees against the respondent would be clearly inappropriate."); *Vale v. Avila,* No. 06–cv–1246, 2008 WL 5273677, *2 (C.D.Ill. Dec. 17, 2008) (finding an award of any attorney's fees "clearly inappropriate" because of the respondent's inability "to shoulder the burden of the 115,872.26 in attorney fees, copying costs, etc. that Petitioner's counsel is requesting," where respondent "has limited financial means and has found little gainful employment in the United States," and, consequently, awarding the petitioner only his "out-of-pocket costs"); *Silverman v. Silverman,* No. Civ.00–2274 JRT, 2004 WL 2066778, *4 (D.Minn. Aug. 26, 2004) (finding any award of fees was "clearly inappropriate," because the respondent was "unable to absorb the necessarily minimal expenses for her family in addition to any fee award, [so that] an award of fees would impair significantly her ability to care for her children"); *but see Neves v. Neves,* 637 F.Supp.2d 322, 345 (W.D.N.C.2009) (concluding that an award of fees and costs was not "clearly inappropriate," even though the respondent was then unemployed and had no assets in the United States, where he owned a two-story building in Germany that he estimated would rent for about $2,000 per month).

*Mendoza v. Silva*, 987 F. Supp. 2d 910, 916 (N.D. Iowa 2014).

In this case, both parties have filed affidavits in support of their arguments for and against Pliego's request for awards and expenses. Hayes submitted her own affidavit in which she states that she has

> incurred additional costs and attorney fees resulting from the wrongful acts of the Petitioner, including: (a) refusing to comply with custody and visitation orders of the Ankara 11th Family Court; (b) directly interfering in timely execution of all custody and visitation orders by reasserting diplomatic immunity rights; (c) refusing to disclose the whereabouts of the child; and (d) filing three separate additional suits, all dismissed by the courts.

[DN 113-1 (Hayes Affidavit).] Hayes also submitted the Affidavit of her attorney, Mahmut Cengiz Sonmez, detailing the extensive custody proceedings that have occurred and are still ongoing in Turkey. [*See* DN 114-1 (Sonmez Affidavit).] Sonmez included several Turkish and translated documents as exhibits to his Affidavit. Sonmez avers that Hayes was awarded temporary custody on August 1, 2016 and permanent sole custody on December 7, 2017, but that

5

Pliego refused to comply with the custody order. Sonmez contends that Hayes obtained an "immediate pick-up order" on January 10, 2017, but that Pliego asserted his diplomatic immunity to prevent the enforcement of the order against him. Eventually, on June 1, 2017, the Turkish Supreme Court remanded the case to the lower Turkish Court and assigned it to a new judge, allowing Pliego to retain temporary custody in the interim.

Pliego also submitted a rebuttal declaration, refuting the allegations that his actions in the Turkish proceedings have been "wrongful" and pointing out that a word in one exhibit to Sonmez's Affidavit was not properly translated. [*See* DN 116-1.] However, Pliego does not dispute that Hayes was awarded custody on December 7, 2016. [*Id.* at 4.] Though both parties acknowledge that that award was overturned and remanded on appeal on June 1, 2017, [*Id.* at 4–5; DN 114-1 at 6], Pliego also points out in his Affidavit that, less than two weeks ago, on September 13, 2017, the original order awarding custody to Hayes was reinstated. [DN 116-1 at 9.] Pliego further states that he "is appealing, and the status quo, that is exclusive temporary custody of the father and every other weekend sleepover with the mother, is in place till that appeal finishes." [*Id.*]

Many of the issues detailed in Hayes' supporting Affidavits, such as Pliego's alleged "wrongful" actions in the Turkish courts, are irrelevant to this Court's determination of the appropriateness of awarding costs and fees that Pliego incurred during the appeal at the Sixth Circuit. However, certain matters, such as Hayes' custody of her son, ability to obtain child support, and her ability to pay an award of costs and fees *are* relevant to this determination. First, though the Court recognizes that custody proceedings are still ongoing in Turkey, at least at this time, Hayes has been awarded custody. [*Id.*] Even if this custody award is later overturned, Hayes still has visitation rights. Accordingly, the effect of Pliego's requested costs and fees on

Hayes' ability to care for her child is a concern for the Court. In her response, Hayes argues that, should her award of sole custody be affirmed, she will be solely "financially responsible for the child, since the Petitioner specifically excluded any action for child support from his immunity waiver." [DN 106 at 3.] Second, the Court is also concerned with Hayes' ability to pay such a high amount of fees and costs, having already been ordered to pay more than $175,000 in costs and fees following prior proceedings in this matter. Hayes further states in her response that "[s]he is not a diplomat, she does not have her living expenses paid by the US Government, [and that] she has been self supporting at a far lower salary than Petitioner's, with far greater living expenses." [*Id.*] The Court finds these arguments to be meritorious.

Based on a review of the information and supporting documents, the Court finds that an award of $58,600.44 would be clearly inappropriate, and will therefore reduce the overall legal fees by 75%. Therefore, Petitioner shall be awarded $14,650.11 for necessary attorney's fees and costs. *See Whallon v. Lynn*, 356 F.3d 138, 141 (1st Cir. 2004) (affirming district court's decrease in requested fees by 65% due to the respondent's inability to pay); *Rydder v. Rydder*, 49 F.3d 373–74 (8th Cir. 1995) (cutting the requested award of fees and costs 46% from $18,487.42 to $10,000) due to the respondents "straitened financial circumstances."); *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 942–43 (W.D. Tex. 2012) ("Upon due consideration, the Court finds that Respondent's financial condition is straitened" and therefore that "the Court will reduce the above-calculated fee award by 55%."); *Berendsen v. Nichols*, 938 F. Supp. 737, 739 (D. Kan. 1996) ("[T]he court believes a fee award which unduly limited respondent's ability to support his children would be 'clearly inappropriate.' Consequently, in light of respondent's financial status and his support of his children, the court shall reduce the fee award in this case by 15%.").

CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

(1) Petitioner's motion to file a rebuttal declaration, [DN 116], is **GRANTED**.

(2) Petitioner's motion for Respondent to amend her filings to redact child's name, [DN 115], is **GRANTED**.

(3) Petitioner's motion for attorney's fees and expenses, [DN 104], is **GRANTED IN PART AND DENIED IN PART;**

(4) Petitioner is entitled to an award of $14,650.11 in attorney's fees and expenses.

Date:

cc: Counsel